OPINION OF THE COURT
Fuchsberg, J.
In this appeal, intervenor-appellants, 21 incumbents who successfully competed for and were promoted to the position of senior dispatcher by the Manhattan and Bronx Surface Transit Operating Authority (MABSTOA) in July, 1973, seek to intervene and vacate a judgment which had annulled the results of the competitive examination on which their appointments were based.
In instituting this article 78 proceeding against MABSTOA to challenge the promotional examination, petitioner-respondents, unsuccessful candidates, sought to vacate the appointments made in reliance thereon chiefly on the grounds that the oral portion of the test was not fair and competitive.[1] The claim of unfairness had two main prongs. One was that an oral examination was administered to separate groups of candidates on two successive weekends between which some of the questions became available to those who were to be interrogated at the second session, thus unfairly advantaging the latter group. The second was that the grading was not governed by objective standards. At the commencement of the proceeding, appellants were not named as parties and, al *490 though it appears that some of them had notice of its pendency through informal channels, none were ever formally notified that the outcome of the suit could render their appointments forfeit.
Special Term, in large measure adopting the recommendations of a Special Referee it had appointed to hear and report, found the test unfair. Accordingly, on August 5, 1976, the court vacated and annulled the eligibility list and ordered MABSTOA to conduct a new competitive examination. At this point, the incumbents moved Special Term for an order permitting them, in effect, to intervene in the proceedings, to vacate the judgment and, upon such vacatur, to participate on the merits. The court, while permitting intervention, did so only to the extent of allowing appellants to participate in the appeal from the judgment; it otherwise denied the motion. The Appellate Division affirmed the August 5 judgment and dismissed as academic the appeal from the order limiting the motion to intervene. For the reasons that follow, we believe the relief for which the appellants moved should have been granted in toto.[2]
We begin by noting that, while our intervention and joinder practice is now delineated by statutes of relatively recent origin (see Twelfth Ann Report of NY Judicial Council, 1946, pp 218-232; 2 Weinstein-Korn-Miller, NY Civ Prac, par 1001.01), even before the turn of the last century our court fully recognized that the fundamental purpose of these devices was not merely to provide, a procedural convenience but to implement a requisite of due process — the opportunity to be heard before one’s rights or interests are adversely affected (see First Nat. Bank v Shuler, 153 NY 163, 170; see, also, Mullane v Central Hanover Trust Co., 339 US 306, 314).
It is to serve both these ends that CPLR 1001 contemplates joinder of "Persons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action” (cf. CPLR 1012, subd [a], par 2). The appellants here fall clearly within the compass of this provision.
As the history of this rather prolonged litigation demonstrates, the would-be intervenors were adversely affected by their original nonjoinder. The interest they shared in the *491 outcome of the proceeding easily could have transcended that of the named respondent, MABSTOA, who, not illogically, might have viewed itself as no more than a neutral stakeholder. The failure of MABSTOA to have joined in this appeal may be confirmation that that is precisely the self-image it in fact had of its role. Indeed, if MABSTOA, which employed both petitioners and intervenors, does not prevail in this proceeding, the new examination it would be called upon to give would be no more than an action it was bound to undertake periodically in any event.
Moreover, quasi-governmental bodies may be motivated by considerations dehors those relating to the merits of a particular case. For example, such a body may prefer to take the long view and wait to press its claims in a controversy presenting a stronger factual setting and thus avoid an adverse precedent. And, resource constraints and even political considerations may govern the decision whether to litigate and how far. (Cf. Matter of Butler v Hayduk, 37 NY2d 497, 499; Shapiro, Some Thoughts on Intervention Before Courts, Agencies and Arbitrators, 81 Harv L Rev 721, 745-748.) On the other hand, the incentive to the potential intervenors — the loss of their promotions, nearly three years old by the time Special Term declared the eligibility list invalid, and with it the accompanying increase in earnings — insured that their stance would be adversarial in every respect.
That several of the intervenors testified at the hearing before the referee in their capacities as officers of the ethnic societies that had given refresher courses during the week which elapsed between the two examinations, and that one intervenor even submitted an affidavit in opposition to the petition, cannot be said to have been an adequate substitute for the opportunity they would have had to defend their interests as full-fledged parties. By no means was this participation, either as affiant or as witnesses called by another party, sufficient to protect their interests. Without their right, for instance, to present independent evidence or to cross-examine witnesses, the incumbents were precluded from showing what indeed they had to show: that whatever irregularities may have occurred during the administering of the examination neither had any discernible effect on the test results nor caused any personal advantage to accrue to any of the intervenors. Failure to grant so much of appellants’ motion to intervene as would have permitted their participation in a de novo *492 consideration of the merits therefore foreclosed a critical factual perspective from emerging (cf. Shapiro, Some Thoughts on Intervention Before Courts, Agencies and Arbitrators, 81 Harv L Rev 721, 740, 743, 748).
Finally, we note that, in situations analogous to that presented here, joinder has been required of parties whose positions would be forfeited upon the success of an action or proceeding brought by another (see Matter of Greenspan v O’Rourke, 27 NY2d 846 [in proceeding to invalidate election of officers in political party, joinder required of successful officers]; Matter of Marcus v Kaplan, 20 AD2d 841 [in proceeding to review commission’s revision of examination results, joinder required of one appointed on basis of test]; Matter of Skliar v Board of Educ., 45 AD2d 1012 [joinder required of incumbent teacher who would be displaced]; Kirkland v Board of Educ., 49 AD2d 693, 694 [in proceeding to challenge appointment of school board official, joinder required of incumbent appointee; abuse of discretion not to permit intervention]).
We thus conclude that, since the appellants were not joined as parties ab initio, in order to effect a complete resolution of the controversy here, as well as to safeguard the appellants’ stake as necessary parties, the motion to intervene should have been granted in all respects.
For all these reasons, the order of the Appellate Division should be reversed and the matter remitted to the Supreme Court, New York County, for further proceedings in accordance with this opinion.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order reversed, with costs, and the matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.

. MABSTOA, a public benefit corporation and a subsidiary of the New York City Transit Authority, was organized pursuant to section 1203-a of the Public Authorities Law, which specifically provides that its employees shall not acquire civil service status (§ 1203, subd 3, par b). However, MABSTOA is bound by its own rules and regulations, which independently provide for appointment and promotion pursuant to fair and competitive examinations.

. On a previous appeal, this court held that the article 78 proceeding was timely commenced by petitioners (44 NY2d 374).